UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
HIN Y. LIMTUNG,

              Plaintiff,                              **MEMORANDUM AND ORDER**
                                                                  16-CV-100 (RRM) (SMG)

           -against-

WELLS FARGO BANK, N.A., et al.,

              Defendants.
------------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiff Hin Limtung, proceeding *pro se*, brings this action alleging that defendants engaged in a criminal enterprise to fraudulently foreclose on his mortgage. (*See* Compl. (Doc. No. 1) at ¶ 1.) Specifically, Limtung alleges that defendants have violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.A. §§ 1961 *et seq.* ("RICO"), and the Fair Debt Collections Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"). For the reasons that follow, Limtung's complaint is dismissed. However, Limtung is granted thirty (30) days from the date of this Memorandum and Order to seek leave to amend the complaint in order to bring his RICO claims in compliance with Federal Rules of Civil Procedure ("Rules") 9(b) and 12(b)(6).

## BACKGROUND

      The following facts are taken from Limtung's complaint and assumed true for purposes of this Memorandum and Order. On August 6, 2007, Wells Fargo Bank, N.A. ("Wells Fargo") filed a foreclosure lawsuit in Queens County New York Supreme Court against Limtung in connection with a property at 31-70 Crescent Street, Astoria, New York, 11106. (*See* Compl. at ¶ 31.) On February 19, 2009, the court awarded Wells Fargo summary judgment, and on November 12, 2014, the court signed a Judgment of Foreclosure and Sale. (*See* Compl. at ¶¶ 35,

65.) During the pendency of the foreclosure, the mortgage was first assigned by Wells Fargo to EMC Mortgage Corp., which subsequently assigned it to Wilmington Savings Fund Society, FSB as Trustee of Primestar-H Fund, which subsequently assigned it to Wilmington Savings Fund Society, FSB as Trustee of Primestar-F Fund I Trust ("WSF"). (*See*, Compl. at Exs. B, G, K.)

On January 8, 2016, Limtung filed a lengthy complaint alleging that defendants perpetrated a complex conspiracy to secure foreclosure on his property through fraud. (*See generally* Compl.) For example, Limtung alleges that defendants fraudulently failed to effectuate service of a Notice of Entry of Default Judgment in the foreclosure action, and engaged in "illegal and unconstitutional" conduct when WSF became the named plaintiff in the foreclosure after its assignment. (*See, e.g.*, Compl. at ¶¶ 50, 55, 57, 63, 64, 80, 81, 98.) Limtung alleges this conspiracy against Wells Fargo, its assignees, officers of the assignees, the assignees' servicing agents, the assignees' lawyers and notaries, various debt collectors, and a court-appointed mediator.[1] (*See id.* ¶¶ 2–33.) The complaint also includes numerous conclusory statements, such as that defendants have "actively hidden the illegal transactions and not filed the required Filing to the SEC" and that defendants concealed the inauthenticity of documents associated with the foreclosure. (Compl. at ¶¶ 52–61, 160–62.)

---

[1] On March 9, 2017, Limtung filed requests for certificates of default against defendants Wells Fargo, Steven J. Baum, P.C., and Steven J. Baum. (*See* Doc. Nos. 43, 45, 46, 47.) The Clerk of Court has not entered default. Pursuant to Rule 55, entry of default is appropriate where a defendant has "failed to plead or otherwise defend" the action. Entry of default is not appropriate where the defendant was not properly served with process. *See, e.g., Dorrough v. Harbor Sec., LLC*, No. 99-CV-7589 (ILG), 2002 U.S. Dist. LEXIS 13546, at *12–*13 (E.D.N.Y. May 10, 2002). Here, Wells Fargo has properly moved to dismiss the complaint pursuant to Rule 12, and thus has not failed to "otherwise defend" the action. In addition, Limtung failed to properly serve Steven J. Baum and Steven J. Baum, P.C. (*See* Opp'n Default (Doc. No 48).) Accordingly, Limtung's requests for certificates of default are denied.

Limtung contends that he does not "seek for the Honorable Court to declare that the Foreclosure Judgment that was rendered by the State was erroneous as a result of Extrinsic Fraud Court (this is a function of the State Court's Appellate Division) but seeks this Honorable Court's determination on the Defendant[s'] actions that led to the State Court Judgment and that violated [RICO and] the Mail and Wire Fraud Statutes and that entitle the Plaintiff remedy of monetary damage." (Opp'n (Doc. No 42-6) at ¶ 7.) That is, Limtung argues that the foreclosure was procured by fraud, and thus he is entitled to the value of the foreclosed property: $2,000,000 in money damages. (Compl. at ¶ 1.)

On February 17, 2017, defendants Peter S. Thomas, Jason Burr, Selene Finance LP, Wells Fargo, David McConnell, Jamie Rand, and WSF (collectively, "moving defendants") moved to dismiss the complaint for failure to state a claim for which relief can be granted pursuant to Rule12(b)(6) and failure to plead fraud with particularity pursuant to Rule 9(b). (*See* Mots. Dismiss (Doc. Nos. 39, 40, 42).)[2]

## DISCUSSION

### I. Standard of Review

Pursuant to Rule 12(b)(6), a party may move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to withstand a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state

---

[2] Defendant Peter S. Thomas includes a motion for sanctions with his motion to dismiss. (*See* Thomas Mot. Dismiss (Doc. No. 39).) Thomas argues that the instant lawsuit is one in a series of delay tactics and frivolous litigation techniques perpetrated by Limtung. (*See generally id.*) On that basis, Thomas moved for monetary sanctions against Limtung pursuant to Rule 11. (*Id.*) However, a "motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). "Rule 11(c)(2) also creates a 'safe harbor' that gives the attorney a chance to modify or withdraw the challenged submission so as to avoid sanctions." *Charles v. Levitt*, No. 15-CV-9334 (PAE), 2016 U.S. Dist. LEXIS 95725, at *18 (S.D.N.Y. July 21, 2016). Rule 11 further provides that a "motion for sanctions is initially to be served only on the attorney, and not filed with the Court." *Id.* Therefore, "[s]anctions may not be awarded under Rule 11(c)(2) where proper notice and opportunity to withdraw or correct the filing were not provided to the party to be sanctioned." *Id.* Accordingly, Thomas's motion for sanctions is denied.

3

a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). The Court assumes the truth of the facts alleged and draws all reasonable inferences in the nonmovant's favor. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

When a plaintiff proceeds *pro se*, the plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, courts "remain obligated to construe a *pro se* complaint liberally"). "[T]he mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum" at the motion to dismiss stage. *Burgess v. Goord*, No. 98-CV-2077 (SAS), 1999 WL 33458, at *1 n.1 (S.D.N.Y. Jan 26, 1999) (internal quotation marks and citations omitted). Notwithstanding the liberal pleading standards granted to a *pro se* plaintiff, if "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is warranted. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).[3]

---

[3] Defendants Wells Fargo and WSF have also moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. (*See* Doc. Nos. 40, 42.) The *Rooker-Feldman* doctrine precludes cases brought in lower federal courts by "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). In *Babb v. CapitalSource, Inc.*, 588 F. App'x 66 (2d Cir. 2015), the Second Circuit held that a suit is not barred by *Rooker-Feldman* where the complaint "seeks damages for injuries suffered as a result of defendants' alleged fraud and does not attempt to reverse or undo a state court judgment." *Babb*, 588 F. App'x at 68. Courts in this circuit have since held that *Rooker-Feldman* does not bar claims where, as here, a plaintiff alleges fraud and "seeks damages equivalent to the value" of a foreclosed property without seeking to reverse the state court judgment through return of the foreclosed property itself. *Wenegieme v. U.S. Bank Nat'l Ass'n*, No. 16-CV-6548 (ER), 2017 U.S. Dist. LEXIS 68909, at *8 (S.D.N.Y. May 4, 2017); *accord Worthy-Pugh v. Deutsche Bank Nat'l Trust Co.*, 664 F. App'x 20, 22 (2d Cir.

## II. FDCPA

"The FDCPA mandates that any action to enforce liability arising under the act be commenced 'within one year from the date on which the violation occurs.'" *Boyd v. J.E. Robert Co.*, No. 05-CV-2455 (KAM), 2010 U.S. Dist. LEXIS 140905, at *18 (E.D.N.Y. Mar. 31, 2010) (quoting 15 U.S.C. § 1692k(d)). Specifically, "the latest date upon which the one year period begins to run is the date when a plaintiff receives an allegedly unlawful communication." *Somin v. Total Cmty. Mgmt. Corp.*, 494 F. Supp. 2d 153 (E.D.N.Y. June 26, 2007). While the FDCPA is subject to equitable tolling, it applies only in "rare and exceptional" circumstances. *Bertin v. United States*, 478 F.3d 489, 494 n.3 (2d Cir. 2007). "Generally, equitable tolling applies only where defendant has engaged in conduct to conceal wrongdoing and, as a result, plaintiff fails to discover facts giving rise to the claim, despite the exercise of reasonable diligence." *Somin*, 494 F. Supp. 2d at 158–59.

Here, even assuming that Limtung's conclusory allegations could make out a claim under the FDCPA, those claims are time-barred. The most recent date that Limtung references with respect to an "unlawful communication" under the FDCPA is April 27, 2014. On that date, Limtung alleges that the defendants knowingly submitted false information in a "Referee's Report" to the state court. (Compl. at ¶ 162.) However, Limtung filed the instant complaint on January 1, 2016, over one after the allegedly unlawful communication took place. As such the statute of limitations on the FDCPA claim had run. Furthermore, Limtung alleges that he "became aware [of] the Defendants' Criminal Scheme on around December 26, 2014." (Compl. at ¶ 87.) Thus, Limtung cannot plausibly assert that the defendants' wrongdoing prevented him

---

2016). Accordingly, the *Rooker-Feldman* doctrine does not bar the Court from reviewing Limtung's claims, and the motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) are denied.

from discovering facts that might give rise to an FDCPA claim. *See Somin*, 494 F. Supp. 2d at 158–59. Accordingly, Limtung's FDCPA claims are dismissed with prejudice as time-barred.

### III. RICO

RICO grants standing for a civil action to "any person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964 (c). Under RICO, a plaintiff must plead "(1) the defendant's violation of § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation." *Commer. Cleaning Servs. v. Colin Serv. Sys.*, 271 F.3d 374 (2d Cir. 2001). Section 1964 requires the plaintiff to allege "racketeering activity" through one of the predicate offenses listed in § 1961. Here, Limtung alleges RICO violations through the predicate offenses of mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343. (*See* Compl. at ¶ 1.)

Limtung's RICO claims are subject to the pleading standards of Rule 9(b). Under Rule 9(b), to allege fraud sufficient to withstand a motion to dismiss under Rule 12(b), a complaint must "'specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.'" *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 172 (2d Cir. 1999) (quoting *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992)). Rule 9(b) "applies to RICO claims for which fraud is the predicate illegal act," *Moore*, 189 F.3d at 172, including where the RICO predicate offense is mail or wire fraud, *see, e.g., Powers v. British Vita, P.L.C.*, 57 F.3d 176, 184 (2d Cir.1995). Such a complaint must "identify the purpose of the mailing within the defendant's fraudulent scheme," *McLaughlin*, 962 F.2d at 191, and "allege facts that give rise to a strong inference of fraudulent intent," *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 812 (2d Cir.

6

1996). "[T]o comply with Rule 9(b), 'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Am. Fed'n of State, Cnty. & Mun. Emps. Dist. Council 37 Health & Sec. Plan v. Bristol-Myers Squibb Co.*, 948 F. Supp. 2d 338, 346 (S.D.N.Y. June 3, 2013) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)). "[W]here multiple defendants are accused of mail or wire fraud, plaintiffs must plead with particularity as to each defendant . . . ." *United States Fire Ins. Co. v. United Limousine Serv.*, 303 F. Supp. 2d 432, 433–44 (S.D.N.Y. Feb. 6, 2004) (internal citations omitted); *accord Spiteri v. Russo*, No. 12-CV-2780 (MKB), 2013 U.S. Dist. LEXIS 128379 (E.D.N.Y. Sept. 7, 2013).

Here, Limtung has failed to plead with particularity the mail and wire fraud predicates to RICO in contravention of Rule 9(b). Limtung's lengthy complaint is replete with conclusory allegations of "illegal assignments," "criminal schemes," "false affidavits," and "intrinsic and extrinsic fraud." (*See generally* Compl.) However, Limtung fails to either "explain why the statements were fraudulent," *Bristol-Myers Squibb Co.*, 948 F. Supp. 2d at 346, or "allege facts that give rise to a strong inference of fraudulent intent," *San Leandro Emergency Med. Group Profit Sharing*, 75 F.3d at 812. One representative paragraph from the complaint reads:

> The Defendants acted with other entities with respect to their Criminal Scheme to launder illegally obtained and invalid Note and Mortgage that encumber the Plaintiffs property with an address of 31-70 Crescent Street, Astoria, NY 11106 (Block 549/Lot 49) through illegal assignments of Note and Mortgage, and submission of false Affidavits and Affirmations, in order to justify foreclosing and selling Plaintiffs property, and to prevent the Plaintiff from asserting his rights and litigating the Home Foreclosure.

(Compl. at ¶ 87.) Limtung further alleges that the defendants submitted these and other "fraudulent documents" to the state court in the foreclosure action, (*id.* at ¶ 87), and that "the

Defendants assisted in, implemented and took part in" these actions, (*id.* at ¶ 85.) Limtung avers that defendants

> had reason to know that the Note and Mortgage that encumbered the Plaintiff property . . . have been illegally securitized and unlawfully sold to multiple parties, and that none of the Defendants can show proper receipt, possession, transfer, negotiations, and assignment of the Plaintiffs original Promissory Note and Mortgage, resulting in imperfect security interests and claims or have the ability to establish that the Mortgage that secured the Note was legally or properly acquired.

(*Id.* at ¶ 75.) Through such statements, Limtung appears to reveal his own lack of understanding of the mortgage assignment process, rather than make any particularized allegation of fraud. Thus, Limtung has failed to meet the pleading standards of Rule 9(b). Accordingly, defendants' motion to dismiss Limtung's RICO claims for failure to state a claim under Rules 12(b)(6) and 9(b) is granted.

### IV. Leave to Amend

Leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), and "a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim," *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2013); *accord Ashmore v. Prus*, 510 F. App'x. 47, 49 (2d Cir. 2013) ("District courts should generally not dismiss a *pro se* complaint without granting the plaintiff leave to amend."); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (*pro se* plaintiffs should be given an opportunity to amend if "a liberal reading of the complaint gives any indication that a valid claim might be stated"). The Supreme Court has interpreted Rule 15 to mean that

> "[i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave should, as the rules require, be 'freely given.'"

8

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008).

Here, Limtung fails to plead his RICO claims with sufficient particularity to satisfy the requirements of Rules 9(b) and 12(b)(6). However, in light of his *pro se* status and the fact that he has yet to amend his complaint, Limtung is granted thirty (30) days leave to amend to plead his RICO claims in satisfaction of Rules 9(b) and 12(b)(6). Specifically, Limtung must "(1) specify the statements that [he] contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner*, 459 F.3d at 290. Should Limtung seek to avail himself of this opportunity, he shall file a proposed first amended complaint, so captioned and bearing the same docket number, and shall plead sufficient facts to support any such claim. Limtung shall also file a brief memorandum of law as to why such an amendment raises a proper claim and is not futile. In the event Limtung seeks to amend, defendants will be given an opportunity to address whether the proposed motion meets the pleading requirements of Rules 9(b) and 12(b)(6).

## CONCLUSION

For the reasons set forth above, the moving defendants' motions to dismiss (Doc. Nos. 39, 40, 42.) are granted. Limtung's FCPA claims are dismissed with prejudice. Limtung is granted thirty (30) days from the date of this Memorandum and Order to seek leave to amend his complaint consistent with this Court's ruling.

Although Limtung paid the filing fee to initiate this action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

9

The Clerk of Court is respectfully directed to mail a copy of this Memorandum and Order to plaintiff Hin Limtung, *pro se*, at the address listed on the docket and note the mailing on the docket.

SO ORDERED.

s/Roslynn R. Mauskopf
_____
ROSLYNN R. MAUSKOPF
United States District Judge

Dated: Brooklyn, New York
June 23, 2017